**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

SUSANNE UBER

CIVIL ACTION

VERSUS

24-792-SDD-RLB

PENN ENTERTAINMENT, INC., et al.

## RULING

Before the Court is the *Motion for Summary Judgment* filed by Defendants PENN Entertainment, Inc. ("Penn") and Zurich American Insurance Company ("Zurich") (collectively "Defendants").[1]  Plaintiff Susanne Uber ("Uber" or "Plaintiff") has filed an *Opposition*,[2] to which Defendants have filed a *Reply*.[3]  The Court has considered the law, arguments, and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is GRANTED.

### I.      LOCAL RULES 7(f) AND 56

At the outset, the Court finds that the Plaintiff's *Opposition* violates Local Rules 7(f) and 56.  Parties are required, and expected, to comply with the Local Rules of the Middle District of Louisiana in filing and opposing motions for summary judgment.  Valid local rules have the force of law,[4] and litigants are charged with knowledge of these rules "the same as with knowledge of the Federal Rules and all federal law."[5]  Therefore, "a party that fails to comply with the Local Rules does so at [their] own peril."[6]  Here, Plaintiff's failure to comply with three local rules intended to facilitate the orderly and expeditious

---

[1] Rec. Doc. 12.
[2] Rec. Doc. 16.
[3] Rec. Doc. 18.
[4] *Slocum v. Anderson*, 2021 WL 3683350, at *2 (M.D. La. Aug. 19, 2021) (citing *Will v. Neary*, 278 U.S. 160, 169 (1929)).
[5] *Id* (internal citation omitted).
[6] *Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 537 (E.D. Tex. 2000).

1

resolution of the instant motion and litigation, generally, is viewed with disfavor and is not without consequence.[7]

Local Rule 7(f) provides that a party "opposing a motion [for summary judgment] shall file a response … within twenty-one [(21)] days after service of the motion."[8] Defendants filed the instant motion on February 2, 2026.[9]  Plaintiff was therefore required to file any opposition thereto no later than February 23, 2026.  But Plaintiff did not file her opposition until March 26, 2026—more than one month after the responsive time limit had passed—and did so without any request for leave of Court, nor any request for an extension of the response period.  Moreover, Plaintiff has failed to provide any good cause or show any excusable neglect to allow for the late filing.  Accordingly, Defendants argue the Court should not consider Plaintiff's *Opposition* or its supporting documents in ruling.[10]

The Defendants' request is well taken.  The Court has broad discretion in deciding whether to allow an untimely response.[11] Considering the significant delay in Plaintiff's filing and the subsequent failure to show any good cause or excusable neglect therefor,[12] there would be no error in the Court declining to consider the untimely *Opposition* and deeming the Defendants' summary judgment motion unopposed.[13]  That said, the Court

---

[7] It is not incumbent on the Court to use already scarce judicial resources to wade through noncompliant materials filed by a party.

[8] M.D. La. Local Rule 7(f).

[9] Rec. Doc. 12.

[10] Rec. Doc. 18, p. 1.

[11] *Nelson v. Star Enter.*, 220 F.3d 587, 2000 WL 960513 at *1 (5th Cir. 2000) (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995)).

[12] Nor did the Court's independent review of the docket identify any reason to explain Plaintiff's untimeliness. While Defendant did file a motion to substitute counsel contemporaneously with its motion for summary judgment, what impact, if any, that would have on Plaintiff's ability to prepare an opposition to the latter is unclear.  In any event, the motion to substitute counsel was resolved by the Magistrate Judge within two days of its filing and ultimately denied—resulting in no changes to Defendant's counsel of record.  Rec. Doc. 15.

[13] *Southeastern Hospitality Partners, LLC v. Indep. Specialty Ins. Co.*, 724 F. Supp. 3d 578, 582 n.18 (E.D. La. 2024) ("Because plaintiff filed an untimely opposition, the Court deemed defendant's motion as unopposed").

is not aware of any prejudice or harm incurred by any party in this instance.[14]  Therefore, in the interest of justice, the Court will consider Plaintiff's untimely *Opposition* and supporting materials.[15]

Although the Court will consider Plaintiff's untimely *Opposition*, her *Statement of Material Facts*,[16] too, violates the Court's local rules in several respects.  Local Rule 56(c) provides that a party opposing a motion for summary judgment is required to "submit with its opposition a separate, short, and concise statement of facts" that admits, denies, or qualifies the facts set forth in the moving party's statement of material facts.[17]  Moreover, Local Rule 56(f) requires that any assertion of fact set forth in that statement be "followed by a citation to the specific page or paragraph of identified record material supporting the assertion."[18]  Facts contained in a supporting or opposing statement of material facts, if supported by specific record citations, are deemed admitted "unless properly controverted."[19]

Here, Defendants filed with their summary judgment motion a *Statement of Uncontested Facts*.[20]  Plaintiff's opposing *Statement of Material Facts*, however, does not "admit, deny, or qualify the[se] facts by reference to each numbered paragraph of [Defendants'] statement[,]" as is required by local rule 56(c).[21]  Thus, Plaintiff fails to

---

[14] *See generally Price v. Dallas Area Rapid Transp. Police Dept.*, 2019 WL 3754455, at *3 n.5 (N.D. Tex. Jul. 8, 2019) (citing *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995) ("[C]ourts have discretion to overlook technical noncompliance with procedural rules, especially when there is no prejudice to the opposing party."); *U.S. v. Hempfling*, 431 F.Supp.2d 1069, 1087 (E.D. Cal. 2006) ("A district court has broad discretion over the application of its own local rules and it may overlook violations where there is no indication that the opposing party is prejudiced.").

[15] *See Million v. Exxon Mobil Corp.*, 2019 WL 3210079, at *3 (M.D. La. Jul. 16, 2019) (considering untimely filing where there was no showing of prejudice to any party).

[16] Rec. Doc. 17.

[17] M.D. La. Local Rule 56(c).

[18] M.D. La. Local Rule 56(f).

[19] *Id.*

[20] Rec. Doc. 12-3.

[21] *See* Rec. Doc. No. 17.

properly controvert any of Defendants' asserted facts which, in turn, are deemed admitted under the rules. Furthermore, despite setting forth seventeen (17) fact paragraphs, Plaintiff's *Statement* does not include a single record citation, as is required by Rule 56(f).[22] The Court may disregard such unsupported statements of fact as it has "no independent duty to … consider any part of the record not specifically referenced in the parties' separate statement of facts."[23] The Court will do so here.[24] Nevertheless, "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute."[25] To the extent Plaintiff directs the Court in her opposition memorandum to specific, countervailing summary judgment evidence demonstrating genuine disputes of material fact as to claims that are properly before the Court, the Court will consider same.

Counsel for Plaintiff is admonished that the requirements of local rules 7(f), 56(c), and 56(f) are set out clearly and the unexcused noncompliance therewith, especially when there is more than one substantive violation, cannot be countenanced. While the Court's emphasis on these particular rules stems from the deficiencies already noted, counsel is reminded that all Local Rules are in full force, and all future filings must conform to those rules.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises from alleged injuries Plaintiff suffered while playing a slot machine at the L'Auberge Casino & Hotel in Baton Rouge ("L'Auberge"). On January 15, 2023,

---

[22] *See id.*

[23] M.D. La. Local Rule 56(f).

[24] *Howlink Glob. LLC v. Centris Info. Servs., LLC*, 2015 WL 216773, at *3 (E.D. Tex. Jan. 8, 2015) ("Courts have broad discretion to determine how and when to enforce the local rules, and when to pardon noncompliance.").

[25] *Braud v. Wal-Mart Stores, Inc.*, 2019 WL 3364320, at *4 (M.D. La. Jul. 25, 2019) (internal citations omitted).

Plaintiff alleges that, as she stood up to push away from the slot machine, an access door on its bottom portion suddenly opened, fell downward, and struck her leg, causing injury.[26] On January 4, 2024, Plaintiff filed the instant lawsuit in Louisiana state court alleging causes of action based in negligence and premises liability against Defendants.[27] Defendants subsequently removed the action to this Court pursuant to 28 U.S.C. § 1441.[28]

Defendants now seek summary judgment on two grounds. First, Penn argues that it neither owns nor operates L'Auberge, and that due to its relationship with the owner, PNK (Baton Rouge) Partnership, Plaintiff cannot sustain a viable claim against it. More specifically, Penn argues that it is not liable for the debts or obligations of any limited liability company or companies that is owns and, therefore, is not a proper party to the present lawsuit. In the alternative, Penn argues that Plaintiff has not met her burden of proof to show that the alleged injury-causing condition "was either created by [D]efendants, or that [D]efendants had either constructive or actual knowledge" thereof.[29] Thus, it contends that a necessary element of La. R.S. § 9:2800.6—Louisiana's Merchant Liability Act applicable to Plaintiff's claim—cannot be satisfied and dismissal of Plaintiff's claim is required as a matter of law.[30]

---

[26] Rec. Doc. No. 12-6, p. 30 ln. 4-19.
[27] Rec. Doc. No. 1-2, p. 9.
[28] Rec. Doc. No. 1.
[29] Rec. Doc. No. 12-2, p. 3 (citing La. R.S. § 9:2800.6(2)).
[30] Rec. Doc. No. 12-2, p. 3. Plaintiff cites to *Richardson v. Louisiana – 1 Gaming*, 55 So.3d 893 (La. App. 5th Cir. 2010), to support its contention that the present case is governed by La. R.S. § 9:2800.6, otherwise known as Louisiana's "slip and fall" statute. The Court agrees that the statute is not limited to a duty of keeping "aisles, passageways, and floors in a reasonably safe condition"—in addition to that duty, the statute clearly requires merchants "to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R.S. § 9:2800.6(A) (emphasis added). Plaintiff provides no argument as to why an improperly secured slot machine access door should not qualify as a "hazardous condition" under the statute.

With respect to Penns' first summary judgment argument, Plaintiff raises two arguments in opposition.  First, Plaintiff contends that its correspondence with Broadspire, the claims administrator for L'Auberge, never indicated that Penn is the wrong party to make a claim against.[31]   More specifically, Plaintiff points to the first sentence of Broadspire's acknowledgement letter to her first-retained counsel's letter of representation which stated: "Please be advised we are the administrator handling claims for PENN ENTERTAINMENT and its subsidiaries."[32]  The same language was present in the acknowledgement letter to Plaintiff's later-retained and present counsel's letter of representation.[33]   Further, Plaintiff notes that both letters of acknowledgment listed the "insured" as "PENN ENTERTAINMENT."[34]  Second, Plaintiff appears to argue—without citation to authority—that Defendants have forfeited their ability to argue that Penn is an "improper party" or "incorrect entity" because it did not raise same as an "affirmative defense" in its *Answer*[35] to the Complaint.[36]

Plaintiff next provides two arguments in opposition to Defendants' alternative argument.  First, Plaintiff avers that "an employee and/or representative … of defendant, Penn Entertainment, Inc., created the dangerous condition by leaving the access panel/door unlocked."[37]  She therefore contends that Defendant's challenged requirement of La. R.S. § 9:2800.6 is satisfied.  Second, and alternatively, Plaintiff contends that the doctrine of *res ipsa loquitur* applies.[38]

---

[31] Rec. Doc. No. 16, p. 9.
[32] *Id*; *see* Rec. Doc. No. 16-4, pp. 3 and 5.
[33] *Id.*
[34] Rec. Doc. No. 16-4, pp. 3 and 5.
[35] Rec. Doc. No. 1-2, pp. 3-5.
[36] Rec. Doc. No. 16, p. 10.
[37] *Id.* at p. 5. (cleaned up).
[38] *Id.* at p. 7.  The Court notes that Plaintiff's *res ipsa loquitur* argument is made in conclusory fashion and is unsupported by sufficient legal reasoning or citation to legal authorities.  Instead, Plaintiff formulaically

With this factual and procedural backgrounds in mind, the Court now turns to the summary judgment standard and merits of the present motion.

## III.    SUMMARY JUDGMENT STANDARD

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[39] This determination is made "in the light most favorable to the opposing party."[40] A party moving for summary judgment "'must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case.'"[41] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[42] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[43]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[44] All reasonable factual

---

lists out the three requirements for a prima facie case of *res ispa* and dedicates significant briefing to show that any video evidence of the sued upon incident has not been produced by L'Auberge; the footage produced so far only shows plaintiff before and after the injury.  While this may be an important consideration in deciding whether one of the enumerated *res ipsa* requirements is met—that the evidence is more accessible to the defendant than the plaintiff—Plaintiff's opposition is silent regarding the other two.

[39] Fed. R. Civ. P. 56(a).

[40] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[41] *Guerin v. Pointe Coupee Par. Nursing Home*, 246 F. Supp. 2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986)).

[42] *Rivera v. Hous. Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[43] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).

[44] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

inferences are drawn in favor of the nonmoving party.[45] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[46] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without "any significant probative evidence tending to support the complaint."'"[47]

## IV.    LAW AND ANALYSIS

As another section of this Court has recognized in an unrelated litigation concerning L'Auberge, "[t]his case features the challenges of naming the proper corporate defendant in a case where associated corporate entities avail themselves of the forum state's laws governing the creation and obligations of limited liability companies ('LLC')."[48]

On the date of the alleged incident, L'Auberge was owned and operated by PNK (Baton Rouge) Partnership.[49]  PNK (Baton Rouge) Partnership is a Louisiana partnership owned by two limited liability companies formed under the laws of Delaware, PNK Development 8, LLC and PNK Development 9, LLC.[50]  Both PNK Development 8, LLC and PNK Development 9, LLC are wholly owned by Pinnacle MLS, LLC, a Delaware limited liability company.[51]  Pinnacle MLS, LLC, itself, is wholly-owned company of Pinnacle Entertainment, Inc., a Delaware corporation with a principal place of business in

---

[45] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[46] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citation omitted).
[47] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (alteration in original) (quoting *Anderson*, 477 U.S. at 249).
[48] *Lee v. L'Auberge Casino & Hotel*, 2018 WL 4622575, at *1 (M.D. La. Sep. 26, 2018).
[49] Rec. Doc. No. 12-5, p. 1.
[50] *Id.*
[51] *Id.*

Pennsylvania.[52]  Relevant here, Defendant Penn Entertainment Inc. is a publicly traded Pennsylvania corporation that owns one hundred percent (100%) of all stock in Pinnacle Entertainment, Inc.[53]  This corporate structure was proven by the Penns' summary judgment evidence.  Plaintiff has offered no competing evidence.  Hence, the corporate structure is undisputed.

Based upon the foregoing corporate structure, Penn argues that its involvement in the ownership scheme of PNK (Baton Rouge) Partnership conclusively supports summary judgment because "it is fundamental law that the members of a limited liability company are not liable for the obligations of the company."[54]  Penn therefore maintains that it cannot be liable for the obligations of the partnership under Louisiana law.

The Court agrees.  Louisiana law considers a limited liability company and its members to be wholly separate persons.[55]  The liability of a limited liability company's members is governed by La. R.S. § 12:1320, which provides, in relevant part:

B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

---

[52] *Id.*
[53] *Id.*
[54] Rec. Doc. No. 12-2, p. 7.
[55] *See* La. Civ. Code art. 24; *Ogea v. Merritt*, 130 So.3d 888, 894-95 (La. 2013).

By its plain language, § 12:1320 generally precludes members of a limited liability company from having any obligation to third parties for the debts, obligations or liabilities of the limited liability company.  Accordingly, Penn's status as the sole owner of Pinnacle Entertainment, Inc., which is the sole member of Pinnacle MLS, LLC, which, in turn, is the sole member and parent company of two other LLCs who comprise the PNK (Baton Rouge) Partnership, does not—in and of itself—render it liable for the obligations of that partnership.[56]  To the contrary, it is that very status that shields it from liabilities arising in connection with the partnership's activities as a general matter under § 12:1320.[57]  While § 12:1320(D) does provide exceptions to the general protection afforded members of an LLC in instances of fraud, breach of a professional duty, or negligent or wrongful acts, Plaintiff has not carried her burden on summary judgment to show that any of these exceptional circumstances apply.  Indeed, Louisiana courts have recognized that "the purpose of a statutory provision such as La. R.S. § 12:1320(D) is to codify the principle that the members of a [LLC] are not shielded from personal liability for their own conduct."[58]  Yet, it appears that Penn's status in the corporate structure described by

---

[56] While PNK (Baton Rouge) Partnership is not an LLC, and Penn cannot therefore be considered a member thereof, this does not change the Court's analysis under § 12:1320.  To conclude otherwise would be to place form over substance.  The principles underlying the statute apply with full force here because it is by way of its membership in an LLC that Plaintiff seeks to impose liability on Penn—a Plaintiff cannot circumvent the intended protections of § 12:1320 simply because the LLC in which the targeted member has an interest ultimately conducts its business by way of a partnership to which the LLC, itself a legal entity, is apart.

[57] While Penn's "membership" in the LLC's that form PNK (Baton Rouge) Partnership is achieved by way of its interest in several subsidiaries, limiting the application of La. R.S. § 12:1320's shielding provisions to only directly named members of an LLC would place form over substance.  Indeed, the separateness of a corporate parent often works to limit liability.  It would be inapposite for the Court to find that Penn's separateness from PNK (Baton Rouge) Partnership provides a technical loophole to a statute intended to limit the liability of those who seek to do business as an LLC—the Court finds the statutory shield applies regardless of whether that person's "membership" is direct or established by way of interest in a subsidiary.

[58] *Mathes Brierre Architects v. Karlton/ISG Enterprises, LLC*, 3111 So.3d 532, 541 n.7 (La. App. 4th Cir. 2020).

10

Hilary Barrett's affidavit is the sole reason for its being named in the present action.[59] This is insufficient. The gravamen of Plaintiff's lawsuit is the negligent management and operation of L'Auberge, duties which are under the purview and control of PNK (Baton Rouge) Partnership.[60] The Court therefore concludes that PNK (Baton Rouge) Partnership is the proper party against which suit should have been filed, not Penn.[61]

The Court further concludes that Plaintiff has failed to set forth any other legal theory by which the Court may impose liability against Penn. While Louisiana courts have generally allowed for the "piercing of the corporate veil … [if] one of two exceptional circumstances" applies, it has not been shown that is the case here.[62] Nothing in the record supports a finding that Penn has used any of its subsidiaries as an 'alter ego' to defraud third parties, or that any of its subsidiaries has "failed to conduct business on a 'corporate footing' such that it is not possible to distinguish the corporation from its managers."[63] The Court therefore finds no reason that would justify maintaining Penn as a party on this ground.

Plaintiff's arguments to the contrary are unavailing. To start, Plaintiff neither contests the applicability of La. R.S. § 12:1320 nor argues that Penn is the proper party to be sued. Instead, the crux of Plaintiff's opposition is that, in deciding to file its petition for damages against Penn, she justifiably relied on Broadspire's acknowledgement letters representing that it was the claims administrator for "PENN ENTERTAINMENT and its

---

[59] Notably, Defendant's counsel notified Plaintiff's counsel in April 2024 that the "correct entity for the casino is PNK (Baton Rouge) Partnership." Rec. Doc. No. 18-2, p.1.

[60] Rec. Doc. No. 12-5, ¶¶ 10-11.

[61] *Lee*, 2018 WL 4622575, at * 5 (finding "[t]he fact that Pinnacle MLS, LLC, PNK development 8, LLC, PNK Development 9, LLC, and Pinnacle Entertainment, Inc. were formed under the laws of Delaware does not alter the Court's analysis or conclusion. Delaware law, like Louisiana law, also limits the exposure of limited liability company members for the debts, obligations, and liabilities of the LLC.").

[62] *Id*, at * 4 (citing *Hodge v. Strong Built International, LLC*, 159 So.3d 159, 1163 (La. App. 3d Cir. 2015)).

[63] *See id.*

subsidiaries" and that "PENN ENTERAINMENT" was the "insured."[64]    This is not sufficient.  To start, whether Plaintiff was justified in believing Penn was the proper party to file suit against is irrelevant—an improper party is not made proper because a plaintiff was reasonable in her mistaken identification thereof.  Indeed, Plaintiff's counsel must be diligent in ferreting out the proper party defendants before filing suit.[65]  It is well-settled that if a plaintiff then sues the wrong defendant, "it is the plaintiff who has made the mistake."[66]  There is no obligation on the part of a defendant or its attorney to inform a plaintiff of its mistake in suing the wrong party.[67]  Even so, the statements on which Plaintiff relied clearly indicate that Broadspire's claim administration services are not exclusive to Penn, but also encompass claims filed against its subsidiaries, such as PNK (Baton Rouge) Partnership.  Thus, the fact that Broadspire never indicated that Penn is the wrong party to seek damages against does not defeat summary judgment.

Plaintiff's second argument fares no better.  As stated above, the Court understands Plaintiff's contention to be that because Defendants' *Answer* "did not raise any affirmative defense such as "improper party" or "incorrect entity[,]" any such argument has been forfeited for purpose of summary judgment.[68]  Indeed, Federal Rule of Civil Procedure 8(c) requires that defendants assert in their answer any "avoidance or affirmative defense" they wish to bring; the failure to do so can result in waiver of the

---

[64] Rec. Doc. No. 16, pp. 9-10.

[65] *Martz v. Miller Bros. Co.*, 244 F. Supp. 246, 252 (D. Del. 1965);  *Lopez-Gonzales v. Ramos*, 2021 WL 3192171, at *4 n. 5 (N.D. Tex. Jul. 28, 2021) ("Seasoned counsel should be able to sue the correct parties).

[66] *Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 108 (5th Cir. 1960).

[67] *Id.*

[68] *See* Rec. Doc. No. 16, p. 10.  Plaintiff's opposition is not clear on what the legal import of Defendant's failure to raise this ground in its Answer is.  Indeed, neither the term "waiver" or "forfeiture" appears in the opposition memorandum.  That said, it is well-settled that the "[f]ailure to timely plead an affirmative defense may result in (forfeiture) and the exclusion of the defense from the case."  *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014).

defense.[69]  But that is not always the case.  Even assuming Defendants were procedurally required to raise this argument as an affirmative defense in their *Answer*—which the Court does not decide—an affirmative defense is not waived if (1) it is raised at a "pragmatically sufficient time" and (2) the plaintiff is "not prejudiced in its ability to respond."[70]  Therefore, defenses raised for the first on summary judgment may be considered under the proper circumstances.[71]

Here, the Court finds that, while there is no bright line rule on the issue of "pragmatically sufficient time," Defendants met this threshold where their motion for summary judgment raised the improper party defense more than six months before the scheduled trial date.[72]  Plaintiff makes no argument to the contrary.  Furthermore, while Plaintiff is thereby afforded a significant period of time to litigate the issue, Defendants' assertion of an improper party defense should not come as a surprise.  Defendants' *Answer* denied every paragraph of Plaintiff's petition for damages alleging Penn owned L'Auberge at the time of the incident.[73]  Early on in this litigation, too, Defendants' counsel notified Plaintiff's counsel that the "correct entity for the casino" is PNK (Baton Rouge)

---

[69] Fed. R. Civ. P. 8(c)(1);  *see Ferdin v. Toyotetsu TTTX*, 2019 WL 12598992, at *3 (W.D. Tex. Apr. 8, 2019) (citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)).

[70] *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983).

[71] *Solomon v. Spalitta*, 484 F. Appx 883, 885 (5th Cir. 2012) (citing *Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398-99 (5th Cir. 2010));  *United States v. Reed*, 2014 WL 462620, at *8 (N.D. Tex. Feb. 5, 2014) (finding defendant did not waive affirmative defense raised for first time on summary judgment where trial was three months way and plaintiff presented no evidence of prejudice by defendant's delay);  *Burnett v. State Farm Fire and Cas. Co.*, 2010 WL 4627727, at *4 (M.D. La. Nov. 4, 2010) (recognizing "a defendant does not per se waive its right to plead an affirmative defense by failing to plead the defense in its answer.").

[72] *See Dubier as Tr. of Pamela Joy Dubier 2011 Revocable Tr. v. Triangle Capital Properties, LLC*, 2023 WL 3686802, at *11 (E.D. Tex. Mar. 9, 2023) ("*Dubier*") (finding defense raised for first time in response to motion for summary judgment was raised as a "pragmatically sufficient time" when "trial was still over six months away");  *ATD Combusters, LLC v. Ameritube, LLC*, 2019 WL 7761436, at *2 (W.D. Tex. Jul. 23, 2019) (finding 46 days before trial date to be pragmatically sufficient time for raising an affirmative defense).

[73] Rec. Doc. No. 1-2, pp. 2-3.

Partnership, not Penn.[74]    Plaintiff's reliance on the earlier communications from Broadspire to maintain an action against Penn became unreasonable at this point.  Yet, Plaintiff maintained her course.  Additionally, Plaintiff has shown no prejudice in her ability to respond to Defendants' improper party defense, which was raised through an appropriate procedural vehicle[75]—indeed, her opposition to the instant motion presents argument against the merits of that very defense.[76]  The Court therefore finds Plaintiff had ample notice and opportunity to respond to Defendant's improper party defense such that no prejudice resulted.  "Where the defense is raised in the trial court in a manner that does not result in unfair surprise or prejudice to the non-moving party, technical failure to comply with Rule 8(c) is not fatal."[77]  Plaintiff's forfeiture/waiver argument fails accordingly.[78]

The Court concludes that there is no genuine dispute of material fact, in this case, that Penn is not individually liable for the obligations of PNK (Baton Rouge) Partnership as the owners of L'Auberge Casino and Hotel Baton Rouge.  By the plain language of La. R.S. § 12:1320, it is not a proper party.  Because Plaintiff's claims against Penn must therefore be dismissed as a matter of law, her claim against Zurich, which is dependent on the success of her claims against Penn, must also be dismissed.[79]

---

[74] Rec. Doc. No. 18-2, p. 1.

[75] *See Robinson v. Road Home Corp.*, 2010 WL 1451392, at *2 (E.D. La. Apr. 6, 2010) (stating that "defendant's contention that it is not a proper party to this suit is properly urged in a … motion for summary judgment.").

[76] *Dubier*, 2023 WL 3686802, at *11 (finding defendant's "failure to plead [affirmative] defense in its Answer has not resulted in unfair surprise to [plaintiff], and [plaintiff's] filing of a reply responding to [defense] indicates that she was not prejudiced in her ability to respond.").

[77] *Aucoin v. RSW Holdings, L.L.C.*, 476 F.Supp.2d 608, 612 (M.D. La. 2007).

[78] *See Word of Life Church of El Paso v. State Farm Lloyds*, 2017 WL 9292185, at *1 (W.D. Tex. Nov. 8, 2017) (reasoning that the affirmative defense raised for the first time in the defendant's *reply* in support of its own motion for summary judgment was not waived in part because trial was still over five months away and the plaintiffs had the opportunity to respond by filing a sur-reply).

[79] *See Brown v. Unknown Driver*, 925 So.2d 583, 590 (La. App. 4th Cir. 2006) ("the insurer's liability is contingent upon proof of the negligence or tortious conduct of the insured."); *Continental Cas. Ins. Co. v.*

14

## V.    LEAVE TO AMEND

Plaintiff lastly requests that she be granted leave of court to amend her petition to add PNK (Baton Rouge) Partnership as a defendant.[80]  Leave to amend, although not automatic, shall be freely given when justice requires.[81]  That said, the Court has discretion whether to allow the opportunity to amend.[82]  Relevant here, "when a plaintiff fails to sue the proper party … the court may grant leave to amend after considering the timeliness of the motion, any unfairness to the proper defendants, and whether any prejudice may arise from the denial of leave to amend."[83]  Furthermore, where the record is well-developed and the proposed amendment to Plaintiff's pleadings would fail to overcome deficiencies noted at summary judgment—which would require dismissal as a matter of law even if the proper party was named—leave to amend would be futile and is properly denied.[84]

To start, the Court notes that Plaintiff's request for leave to make the proposed amendment comes long after the need for such amendment should have been clear.  As stated previously, Defendants' counsel communicated to Plaintiff's counsel, on April 22, 2024, that the "correct entity for the casino is PNK (Baton Rouge) Partnership."[85]  A simple and straightforward investigation of the corporate structure surrounding L'Auberge would

---

*RAS Management Co., Inc.*, 625 So. 2d 745, 748 (La. App. 1st Cir. 1993) ("regardless of whether an action is brought against the insurer alone or against the insurer and the insured, the liability of the insurer is premised on a finding of liability of the insured.")

[80] Rec. Doc. 16, p. 11.

[81] Fed. R. Civ. P. 15(a)(2).

[82] *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1302-03 (5th Cir. 1995).

[83] *See Cortes v. Havens*, 2014 WL 6861245, at *6 (N.D. Tex. Dec. 5, 2014).

[84] *Celestine v. Gusman*, 2015 WL 7752314, at *4 (E.D. La. Oct. 1, 2015) ("In any event, it is clear that, even if plaintiff had named a proper defendant or were allowed an opportunity to amend his complaint to name one, his underlying [] claim would still fail."); *Taylor v. Edwards*, 2010 WL 2024728, at *4 (E.D. Tex. May 18, 2010) (citing *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529-30 (5th Cir. 1994) ("if plaintiff's claim would fail as a matter of law, based on a well-developed record, remand to allow leave to amend would not be required).

[85] Rec. Doc. No. 18-2, p. 1.

have confirmed the same.  Yet, Plaintiff has presented no evidence—save for attempting to justify her mistake—to show that, in the five months between that notification and Defendants' removal of the action to this Court, she made any efforts to ensure that only a proper party was being subjected to litigation.  Nor has she shown that any such efforts have been made in the approximately 21 months that the matter has been pending before this Court.  A court may deny a motion for leave if the movant (or requestor) "previously knew or should have known [the] facts on which [the] amendment is based."[86]  The Court finds this reasoning to fit the circumstances presented here neatly.

The Court also finds that, even if Plaintiff was permitted leave to amend her petition to reflect a proper party, such an amendment would be futile since, on the existing record, the statutory requirements of La. R.S. § 9:2800.6 would remain unmet as to any newly named party.  More specifically, Plaintiff has put forth no competent summary judgment evidence to show that anyone associated with L'Auberge either "created or had actual or constructive notice of the condition" which caused the slot machine door to open, as is required under that statute.[87]  While Plaintiff avers that "an employee and/or representative, and/or hourly worker, of [Penn] created the dangerous condition of leaving the access panel/door unlocked[,]" she provides no summary judgment evidence in support of that assertion.  Plaintiff's own deposition testimony, however, reveals she does not actually know whether the door was locked—she simply states "[w]ell, if it was locked, it wouldn't have opened.  I assume it wouldn't have opened."[88]  But without more, conclusory allegations and Plaintiff's own speculation are insufficient to satisfy Plaintiff's

---

[86] *Lexington Ins. Co. v. North Am. Interpipe, Inc.*, 2010 WL 11583139, at *1 (S.D. Tex. Mar. 1, 2010) (citing *RE/MAX Int'l, Inc. v. Trendsetter realty, LLC*, 655 F. Supp. 2d 679, 694-95 (S.D. Tex. 2009)).
[87] *See* La. R.S. § 9:2800.6(2).
[88] Rec. Doc. 12-6, p. 31 ln. 23-25.

16

burden in opposing summary judgment.[89]   The same principle applies to Plaintiff's assertion that "any constructive notice of the [purported] unreasonably dangerous condition, would have been noted, had regular inspections [been] made of the machines."[90]

Nor does Plaintiff's offered photographs of the open access door to a completely different slot machine at L'Auberge—taken more than one month after the incident—support Plaintiff's contention that her complained of negligence "was a normal occurrence at the casino."[91]   Notwithstanding its temporal and spatial irrelevance to the present case, Plaintiff's photographs say nothing about the cause of the open access door they capture, how long it has been ajar, or the purpose therefor.   To conclude that it was due to negligence, instead of any number of other reasons (such as routine maintenance), would require this Court to rely on "unsubstantiated assertions" and "improbable inferences"—neither of which is sufficient to defeat a summary judgment motion.[92]   Even then, the Court would be required to conclude that the unreasonably dangerous condition that purportedly existed with the photographed machine in February 2026 was the same condition that existed in the machine Plaintiff was using a month prior.   But this is a bridge

---

[89] *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citing *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).

[90] Rec. Doc. 16, p. 5. Plaintiff produces no evidence to suggest the maintenance schedule of the slot machines was deficient or fell below any established standard as would create a fact issue thereon. Notably, "[n]egligence is conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm." *Lawrence v. New Hampshire Indem. Co.*, 583 So.2d 155, 156 (La. App. 3rd Cir. 1991).  She merely speculates what an inspection might have uncovered, without any showing that (1) such an inspection did not occur, or (2) that there was indeed a condition to be discovered in the that would constitute an unreasonably dangerous condition.

[91] *Id.*, p. 8 (referencing photographs in Rec. Doc. 16-3).

[92] *Espinoza v. State Farm Lloyds*, 2024 WL 4919587, at *2 (W.D. Tex. Sept. 16, 2024) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

too far.  Tellingly, Plaintiff presents no other evidence to mount a defense to summary judgment.

The Court further concludes that Plaintiff cannot rely on the doctrine of *res ipsa loquitur* to meet her burden.  Plaintiff's reliance on *res ipsa* appears to rise and fall on her contention that "it does not seem reasonable [that] the video actually depicting the injury would no longer exists [because] … it is well-established that casinos have cameras almost everywhere."[93]  While *res ipsa* does requires that evidence be "more readily accessible to [the] defendant than plaintiff[,]" more is needed to sustain the doctrine's application.[94]  Importantly, because "the doctrine does not dispense with the rule that negligence must be proved[,]"[95]  Plaintiff bears the burden of excluding reasonable explanations for the accident other than defendant's negligence—that is, the accident is of a kind that does not occur in the absence of negligence.  Here, Plaintiff makes no attempt to do so.  As this Court has previously stated, "Plaintiffs cannot simply invoke the doctrine of *res ipsa loquitur* and argue that such an assertion, without any legal discussion or evidentiary support, precludes summary judgment."[96]

Because Plaintiff has failed to present any competent summary judgment evidence to create an issue of fact on the merits, Defendants' summary judgment motion is uncontroverted, justifying a judgment of summary dismissal.  Yet, Plaintiff now asks for leave of court to add PNK (Baton Rouge) Partnership, the proper defendant, to this action, to pursue these same claims which will necessarily fail for the same reasons outlined

---

[93] Rec. Doc. 16, p. 7.

[94] *Porter v. Lafayette General Surgical Hospital, LLC*, 2021 WL 3201164, at *3 (W.D. La. Jul. 28, 2021) (citing *Shahine v. Louisiana State Univ. Med. Ctr. in Shreveport*, 680 So. 2d 1352, 1355 (La. App. 2d Cir. 1996)).

[95] *Spires of Sherwood Owner, LLC v. Baker*, 2026 WL 181669, at *4 (La. App. 1st Cir. Jan. 23, 2026)

[96] *Johnson v. Transwood, Inc.*, 2015 WL 5634584, at *6 (M.D. La. Sept. 24, 2015).

above.  It is well-settled, however, that "[w]here the amendment proposes to add new defendants who 'stand in no different position than (defendants) already named' in the lawsuit, and the claims against the original defendants have been determined to be groundless, denial of leave to amend is not an abuse of discretion."[97]

## VI.    CONCLUSION

For the foregoing reasons, the *Motion for Summary Judgment*[98] filed by Defendants is GRANTED and Plaintiff's claims are DISMISSED with prejudice. Furthermore, Plaintiff's request for leave of Court to amend her pleadings is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 1, 2026</u>.


_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[97] *In re Freytag*, 155 B.R. 150, 155 (Bankr. N.D. Tex. 1993) (quoting *Emory v. Texas State Bd. Of Med. Exam'rs*, 748 F.2d 1023, 1027 (5th Cir. 1984)).
[98] Rec. Doc. 12.